UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LARRY DEVONTE HARRIS,

        Petitioner,                  Case No. 1:22-cv-820

v.                                         Honorable Paul L. Maloney

BRYAN MORRISON,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that the district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999).

The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209 (2006). After undertaking the review required by Rule 4, the Court concluded that the petition appeared to be untimely—more than two months late—and, thus, barred by the one-year statute of limitations. Nonetheless, the Court permitted

Petitioner, by way of an opinion and order to show cause (ECF Nos. 6 and 7), an opportunity to demonstrate why his petition should not be dismissed as untimely.

Petitioner has filed a response to the order to show cause, arguing that he was hampered in his efforts to file his petition by restrictions put in place because of the COVID-19 pandemic and by the eventual closure of his facility and transfer from the Michigan Reformatory to the Lakeland Correctional Facility. He characterizes the restrictions and transfers as state-created impediments that stood in the way of the timely filing of his habeas petition.

As set forth fully below, upon further examination, the Court determines that the petition was not more than two months late as set forth in the previous opinion; it was about two weeks late. Moreover, the Court finds that Petitioner has failed to demonstrate any reason to equitably toll the period of limitation, nor has he supported his claim that a state-created impediment stood in the way of his timely filing of the petition. Accordingly, the Court concludes that the petition is properly dismissed as untimely.

Nonetheless, because a delay of about two weeks presents a much closer question than a delay of months, the Court will also, in the alternative, conduct a Rule 4 preliminary review of the petition on the merits. Considering the petition on the merits, it is properly dismissed for failure to raise a meritorious federal claim.

## Discussion

### I.  Statute of limitations

Petitioner Larry Devonte Harris is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. On March 7, 2018, following a three-day jury trial in the Kent County Circuit Court, Petitioner was convicted of domestic violence, in violation of Mich. Comp. Laws § 750.814, interfering with

electronic communications, in violation of Mich. Comp. Laws § 750.540, and felonious assault, in violation of Mich. Comp. Laws § 750.82. On May 1, 2018, the court sentenced Petitioner as a fourth-habitual offender, Mich. Comp. Laws § 769.12, to concurrent sentences of 12 to 70 years for domestic violence, 4 to 15 years for felonious assault, and 2 to 15 years for interfering with electronic communications. Those sentences, in turn, were to be served consecutively to sentences for which Petitioner was on parole when he committed the present offenses.

On September 1, 2022, Petitioner filed his habeas corpus petition. The instant petition, however, was not Petitioner's first. On June 3, 2021, Petitioner filed his first habeas corpus petition raising four grounds for relief, as follows:

> I. An arrest warrant was issued in violation of the Fourth Amendment. Affiant knowingly falsified a material fact in her affidavit warrant which was necessary to the finding of probable cause, to prosecute one who is actually innocent.
>
> II. Petitioner was deprived of effective assistance of counsel [because] defense trial counsel failed to investigate and present Fourth Amendment claim and file proper pretrial motions.
>
> III. Petitioner was maliciously prosecuted in violation of the Fourth and Fourteenth Amendments. [P]olice detective and prosecutor manufactured probable cause by fabricating evidence and using false testimony to arrest, try, and convict one who is actually innocent.
>
> IV. Trial counsel deprived Petitioner of effective assistance of counsel [because] trial counsel failed to impeach the state's witness['s] false testimony on the material fact[s] with impeachment evidence and prosecutor's false and misleading information.

Pet., *Harris v. Skipper*, No. 1:21-cv-460 (W.D. Mich.), (ECF No. 1, PageID.6–10.) Petitioner supplemented his initial four habeas grounds with two additional grounds:

> V. Prosecutors misrepresented evidence (photo of knife). Investigating officers took pictures of a knife and a bathroom door with holes in it because the allege[d] victim reported that the petitioner stabbed the door with [the] knife, but prosecutors represented to the courts and jury that the photo of

> [the] knife was taken because it was used to assault the victim by holding it to her throat.
>
> VI. Trial counsel deprived petitioner of effective assistance of counsel . . . [because counsel] fail[ed] to adequately investigate and compare photographic evidence and elicit testimony or make arguments about discrepancies in evidence, and for failure to challenge the prosecution's proof on an element of the crime.

Suppl., *Harris v. Skipper*, No. 1:21-cv-460 (W.D. Mich.), (ECF No. 4, PageID.28–29.)

Based on Petitioner's representations in the petition, the Court concluded that Petitioner had not exhausted his state court remedies with regard to any of the issues raised in the petition. He had raised at least two—habeas grounds I and III—by way of a motion for relief from judgment that the trial court denied on March 29, 2021. When the Court reviewed the petition, the time for Petitioner to file an application for leave to appeal in the Michigan Court of Appeals had not yet expired.

The Court considered whether the petition should be held in abeyance while Petitioner exhausted his state court remedies. The propriety of that relief depended on the time remaining in Petitioner's period of limitation. Because Petitioner had several months remaining in the period of limitation, the Court dismissed the petition without prejudice so that Petitioner might exhaust his state court remedies. Op., *Harris v. Skipper*, No. 1:21-cv-460 (W.D. Mich. June 15, 2021), (ECF No. 6, PageID.37–38.)

After the Court dismissed the petition, on July 9, 2021, Petitioner filed his application for leave to appeal to the Michigan Court of Appeals. *See* https://www.courts.michigan.gov/c/courts/coa/case/357773 (last visited Dec. 27, 2022). By order entered August 13, 2021, the court of appeals denied leave to appeal. Petitioner then filed an application for leave to appeal to the

4

Michigan Supreme Court. That court denied leave by order entered January 31, 2022. *People v. Harris*, 969 N.W.2d 42 (Mich. 2022).

Petitioner then returned to this Court. On September 1, 2022, Petitioner filed his present habeas petition raising two grounds for habeas relief, as follows:

> I. A warrant was secured in violation of the Fourth Amendment of the U.S. Const.
>
> II. Perjured testimony was used to obtain a conviction and to create probable cause.

(Pet., ECF No. 1, PageID.5–7.)

As the Court explained in the September 22, 2022, opinion, Petitioner's application appeared to be barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

5

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured. Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner appealed the judgment of conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on April 29, 2020. Petitioner did not petition for certiorari to the United States Supreme Court. The one-year limitations period, however, did not begin to run until the period in which Petitioner could have sought review in the United States Supreme Court had expired. *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).

In the previous opinion, the Court assessed the timeliness of Petitioner's filing using a ninety-day period for filing of a petition for certiorari. But, because the Michigan Supreme Court entered the order denying discretionary review after March 19, 2020, but before July 19, 2021, the period to file a petition for certiorari was 150 days.[1] The 150-day period expired on September 26, 2020.

Petitioner had one year from September 26, 2020, until September 26, 2021, to file his habeas application. Petitioner filed his application on September 1, 2022. Thus, he filed more than one year after the period of limitations began to run. Absent tolling, his application is time-barred.

In Petitioner's response, he contends that the timeliness of his petition should not be measured beginning with the date his judgment became final, as provided in 28 U.S.C.

---

[1] *See Rules of the Supreme Court of the United States-Miscellaneous Order addressing the Extension of Filing Deadlines [COVID-19]*, 334 F.R.D. 801 (2020) (extending the period to file a petition for certiorari from 90 days to 150 days for petitions due on or after March 19, 2020); *Miscellaneous Order Rescinding COVID-19 Orders*, 338 F.R.D. 801 (2021) (rescinding the extension for orders denying discretionary review issued on or after July 19, 2021).

§ 2244(d)(1)(A); rather, Petitioner claims that the period should not commence running until after a state impediment to his filing of the petition was removed, as provided in 28 U.S.C. § 2244(d)(1)(B). The Sixth Circuit has read the language of that subparagraph as requiring two elements: "[n]ot only must the state impede the petitioner in some fashion, but also that obstruction must cause the untimely filing of the petition." *Colwell v. Tanner*, 79 F. App'x 89, 93 (6th Cir. 2003) (citing *Winkfield v. Bagley*, 66 F. App'x 578 (6th Cir. 2003)).

Petitioner posits that the restrictions the Michigan Department of Corrections put in place in response to the COVID-19 pandemic rise to the level of an unconstitutional state impediment. The Sixth Circuit has acknowledged "that a lack of access to certain legal resources may constitute an impediment under . . . Section 2244(d)(1)(B) . . . ." *Simmons v. United States*, 974 F.3d 791, 795 (6th Cir. 2020). But even if the restrictions put in place in response to the COVID-19 pandemic unconstitutionally presented an impediment, Petitioner has nothing to support his claim that the impediment caused the untimely filing.

Petitioner reports that the COVID-19 lockdowns prevented his access to the legal writer program and the library from May 2022 through August 12, 2022. (Pet'r's Resp., ECF No. 10, PageID.78.)[2] Leading up to May of 2022, however, it is clear that Petitioner was aware of the

---

[2] The MDOC reports that "[t]he Legal Writer Program provides eligible prisoners in Correctional Facilities Administration (CFA) institutions with legal assistance on matters relating to their criminal conviction or conditions of confinement. Only prisoners not represented by counsel who are unable to effectively help themselves by using the law library or other available legal resources are eligible to receive Legal Writer Program services." MDOC Policy Directive 05.03.116 ¶ S (eff. Apr. 5, 2021). The directive indicates that a prisoner is eligible to receive Legal Writer Program services if he or she meets any of the following criteria:

    1. Does not have a verified GED or high school diploma.

    2. Does not speak, read, or write English.

deadline that he faced. (*See* RMI Legal Writer Intake form and notes, ECF No. 10-1, PageID.88.) Moreover, throughout that time period, Petitioner had the petition he had filed in this Court during 2021 and his state court motion for relief from judgment and appeal materials. Petitioner had everything he needed to file his petition. The Court's approved form habeas petition requires Petitioner to do nothing more than set out the issues he had raised in the state courts and the grounds for habeas relief. Review of the petition filed reveals that Petitioner did nothing more than that. (Pet., ECF No. 1, PageID.5–8.) The issues he raised are the same as those raised in his initial petition as supplemented. The present habeas ground I is identical to habeas ground I from Petitioner's first petition. (*Id.*, PageID.5–6); Pet., *Harris v. Skipper*, No. 1:21-cv-460 (W.D. Mich.), (ECF No. 1, PageID.6). And the present habeas ground II—regarding the use of perjured testimony to convict Petitioner and create probable cause—was raised in the supplement to Petitioner's first petition. (Pet., ECF No. 1, PageID.7–8); Suppl., *Harris v. Skipper*, No. 1:21-cv-

---

> 3. Has a documented physical or mental impairment or a learning disability that may affect their ability to use the law library to prepare and file a legible and coherent pleading.
>
> 4. Is undergoing reception center processing.
>
> 5. Is housed in any form of segregation other than temporary segregation.
>
> 6. Is housed in a Department operated inpatient medical unit.
>
> 7. Is housed in protective housing, or other non-traditional general population housing, that does not allow for direct access to legal research materials as approved by the Deputy Director or designee.

*Id.* ¶ T. Petitioner's response to the order to show cause suggests that he is eligible for the program because he does not have a GED or high school diploma. (Pet'r's Resp., ECF No. 10, PageID.78.) Although Petitioner is eligible for that assistance, he has submitted many pleadings in this Court in habeas and civil rights cases that are in his own handwriting rather than typewritten as is typically the case for documents prepared by the legal writer program. Thus, even if Petitioner was not able to avail himself of the services of the legal writer program, it is not clear that the program is necessary to preserve his constitutional right of access to the courts.

460 (W.D. Mich.), (ECF No. 4, PageID.28–29). The Court concludes, therefore, that Petitioner has failed to show that the COVID-19 restrictions prevented him from timely filing the petition. Petitioner is not entitled to the later period of limitation "start date" offered by 28 U.S.C. § 2244(d)(1)(B). The Court will now turn to whether tolling of the state of limitations is appliable to Petitioner's habeas petition.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed"). Petitioner filed a motion for relief from judgment in the trial court on March 12, 2021. *See* https://www.accesskent.com/CNSearch/appStart.action (search First Name "Larry," Last Name "Harris," Year of Birth "1979," select criminal; select Case Number "17-10975-FH") (last visited Dec. 27, 2022).

From the date Petitioner's judgment became final to the date he filed his motion for relief from judgment, 167 days ran on his period of limitation. The period was then tolled until January 31, 2022, when the Michigan Supreme Court denied Petitioner's petition for certiorari on his motion for relief from judgment. The period then commenced running again, and on Wednesday, August 17, 2022—198 days later—the period of limitation expired. Petitioner's filing on September 1, 2022, was two weeks late.

The one-year limitations period applicable to § 2254 is also subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling relief should be granted "sparingly." *See,*

*e.g.*, *Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011), *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). A petitioner seeking equitable tolling must show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner offers the COVID-19 restrictions and his August transfer out of the Michigan Reformatory as extraordinary circumstances that stood in his way. Even if those circumstances are extraordinary, as set forth above, Petitioner has not shown that they prevented timely filing.

Beyond the restrictions and his transfer, Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case. The fact that Petitioner is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations does not warrant tolling. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and excuse his late filing."); *Allen*, 366 F.3d at 403 ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling." (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991))). Moreover, in this instance, by way of the Court's opinion dismissing the first habeas action, the Court specifically advised Petitioner regarding the period of limitation and how it would operate after he exhausted his appeals on the motion for relief from judgment. Then, Petitioner's legal writer advised him regarding when the period of limitation would expire. Petitioner was fully advised regarding the need to timely file his petition and he had everything he needed to file it, but he waited too long.

10

The reason Petitioner waited is apparent from the present petition. He states: "[t]he court told me that my one-year statute of limitation starts from the last order in post-conviction proceeding in state court, which was on 1/31/22 Michigan Supreme Court No. 163639." (Pet., ECF No. 1, PageID.12.) Petitioner simply misconstrued the Court's prior opinion. At no point does the Court state or suggest that a new one-year period begins after the last order in post-conviction proceedings is entered. Petitioner's error with regard to the date his petition was due does not warrant equitable relief.

For all of these reasons, Petitioner is not entitled to equitable tolling of the statute of limitations.

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. In order to make a showing of actual innocence under *Schlup*, a petitioner must present new evidence showing that "it is more likely than not that no reasonable juror would have convicted [the petitioner.]" *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327) (addressing actual innocence as an exception to procedural default). Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *Id.* at 399–400.

In the instant case, Petitioner may baldly claim that he is actually innocent. He made that claim in his initial petition. Pet., *Harris v. Skipper*, No. 1:21-cv-460 (W.D. Mich.), (ECF No. 1, PageID.6) ("Affiant knowingly falsified a material fact in her affidavit warrant which was

11

necessary to the finding of probable cause to prosecute one who is actually innocent."). He repeats that claim in his motion seeking discovery in the present action. (Pet'r's Mot., ECF No. 5, PageID.59) ("I am innocent for this felonious assault offense . . . ."). But Petitioner proffers no new evidence of his innocence, much less evidence that makes it more likely than not that no reasonable juror would have convicted him. *Schlup*, 513 U.S. at 327, 329. As set forth more fully below, all of his arguments are premised on a claim that the victim lied. He offers no proof that the victim lied. At best, he claims that there is some inconsistency between the version of events recorded in the initial police report and the testimony the victim provided at the preliminary examination and trial. Because Petitioner has wholly failed to provide evidence of his actual innocence, he would not be excused from the statute of limitations under 28 U.S.C. § 2244(d)(1). His petition therefore is properly dismissed with prejudice because it is time-barred.

## II.     Failure to raise a meritorious claim

Alternatively, as explained below, even if the Court determined that Petitioner was entitled to the later limitations period commencement date provided for in § 2244(d)(1)(B) or even if the Court equitably tolled the period of limitation long enough to render the petition timely, Petitioner would not be entitled to habeas relief because the issues he raises lack merit.

The Michigan Court of Appeals set forth the evidence introduced at Petitioner's trial as follows:

> This case stems from a violent domestic assault committed by defendant against the mother of his child. The victim testified that defendant had an argument with his girlfriend and that he called the victim, asking her to pick him up. The victim picked up defendant, and the two drove back to her place. The victim testified that defendant spent the night at her home, with defendant staying in a room with their son. The victim slept separately in her own room. After she awoke the next day, the victim discovered money missing from her wallet and confronted defendant. According to the victim, an argument ensued and quickly escalated with defendant's becoming violent. Along with yelling at and threatening the victim, defendant threw, kicked, choked, spit on, and punched her repeatedly in different areas of the home over a prolonged period. He then put a knife to the victim's neck

and threatened to kill her. The victim testified that the assault was committed in front of their young child and that defendant was high on cocaine. The victim attempted to call the police using her cell phone, but defendant grabbed the phone and threw it to the ground, smashing the phone. The victim, whose face, head, and body were bruised and bloodied, was finally able to escape her home and call the police using a neighbor's phone. The court admitted into evidence photographs of the victim's injuries, the smashed phone, the knife, and a bathroom door damaged when defendant thrust the knife into it several times while the victim and child cowered inside.

*People v. Harris*, No. 344028, 2019 WL 5418339, at *1 (Mich. Ct. App. Oct. 22, 2019).

"The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted). Petitioner could rebut that presumption by clear and convincing evidence. In this instance, however, although Petitioner contends that the victim was lying, he does not dispute that she testified exactly as the court of appeals reported. Indeed, Petitioner's brief reports the same testimony in significantly greater detail. (Pet'r's Br., ECF No. 3, PageID.32–35.)[3]

Both of Petitioner's habeas grounds depend on Petitioner's claim that the victim was not telling the truth. (*See, e.g.*, *id.*, PageID.42) ("[The victim's] testimony on direct examination during the probable cause hearing and during jury trial was inaccurate and substantially misleading at best, and mendacious prevarication at the other end."). Petitioner identifies two specific facts that he claims the victim misrepresented. First, the victim told police that Petitioner held up the knife like he was going to stab her while stating he was going to kill her. That testimony is reflected in the police reports and in the probable cause affidavit that was used to support a warrant for

---

[3] Additionally, Petitioner included excerpts from the trial transcript and the preliminary examination transcript as exhibits to a civil rights suit he filed against the detective, the prosecutors, and the district court judge who conducted the preliminary examination. *Harris v. Kitchka*, No. 1:19-cv-954 (W.D. Mich.), (ECF No. 1-1). The Court has reviewed those transcripts, and the transcripts confirm the accuracy of the accounts of the court of appeals and Petitioner regarding the testimony.

13

Petitioner's arrest. (Aff. & Reports, ECF Nos. 3-1, 3-2, PageID.46–53.) And the victim so testified at trial. (Pet'r's Br., ECF No. 3, PageID.33) ("[Petitioner], according to [the victim], eventually entered the bathroom, holding the knife up like he was going to stab her[.]"). But, at Petitioner's pretrial and trial, the victim also testified that Petitioner held the knife up to her neck so that it was just touching her skin. (*Id.*, PageID.34.)

Petitioner presents those two facts as if they are mutually exclusive, or at least inconsistent; but that is not necessarily so. It is possible that Petitioner "[held up] the knife . . . like he was going to stab her" by "[holding it] up to her neck so that it was just touching her skin." (*Id.*, PageID.33, 34.) Or it is possible that the victim was describing two distinct instances of assault with the knife, one that made its way into the police reports and probable cause affidavit—holding up the knife like he was going to stab her—and another that did not—holding the knife up to her neck so that it was just touching her skin.

Petitioner's arguments, however, depend further on a particular legal distinction between those two events that simply does not exist. Petitioner contends that holding the knife up the victim's neck so that it was just touching her skin could constitute felonious assault while holding up the knife like he was going to stab the victim could not. That is ludicrous.

The Michigan Penal Code describes felonious assault as follows:

> [A] person who assaults another person with a . . . knife . . . without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both.

Mich. Comp. Laws § 750.82. The elements of the crime are "(1) an assault, (2) *with a dangerous weapon*, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Jackson*, 790 N.W.2d 340, 343 n.2 (Mich. 2010) (emphasis in original). A simple criminal assault, in turn, "is made out from either an attempt to commit a battery

14

or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v. Gardner*, 265 N.W.2d 1, 7 (Mich. 1978) (quoting a criminal law treatise). Finally, a battery is any forceful or violent touching of the person. *See, e.g.*, *People v. Leffew*, 975 N.W.2d 896, 912 (Mich. 2022); *People v. Datema*, 533 N.W.2d 272, 275 n.8 (Mich. 1995). To the extent there were two separate events, they might be distinguished by the fact that one was also a battery; but under Michigan's penal code, both were plainly felonious assaults.

The other specific lie that Petitioner attributes to the victim is her claim that her roommate told her that he saw Petitioner in the kitchen the day of the assault. Petitioner challenges that particular testimony from the victim at the preliminary examination based on the roommate's testimony at trial that the roommate did not see Petitioner on that day. (Pet'r's Br., ECF No. 3, PageID.41.) The two statements, however, are not directly contradictory. The roommate may have told the victim that he saw Petitioner on the date of the incident even if, in fact, he did not.

In Petitioner's initial habeas action he reported that he raised only two issues on direct appeal: a claim that he had been unconstitutionally removed from the courtroom during his trial and a claim that his sentence was unconstitutional. Pet., *Harris v. Skipper*, No. 1:21-cv-460 (W.D. Mich.), (ECF No. 1, PageID.2.) Petitioner makes the same report in his present petition. (Pet., ECF No. 1, PageID.2.) Neither report is accurate.

The Michigan Court of Appeals' direct appeal opinion and the docket make clear that Petitioner raised additional issues in a *pro per* supplemental brief. See *Harris*, 2019 WL 5418339, at *5; Case Information, *People v. Harris*, Case No. 344028 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/344028 (last visited Dec. 27, 2022). Although Petitioner's *pro per* supplemental issues may not have been framed identically to the issues raised in his post-judgment motion for relief from judgment or his present petition, they certainly appear

15

to be substantially the same, animated entirely by Petitioner's unsupported claims that the victim's testimony was false and that, when considering a charge of felonious assault, there is a meaningful distinction between holding a knife as if to stab someone and holding a knife to that person's throat.

The court of appeals addressed Petitioner's *pro per* supplemental issues as follows:

> [I]n his Standard 4 brief, defendant argues that the district court erred in binding defendant over for trial following the preliminary examination, considering that there was an absence of probable cause to conclude that defendant committed a crime. This argument is greatly lacking in merit. Defendant presents nonsensical arguments unsupported by law and/or the facts contained in the record. At the preliminary examination, the victim testified to the assault committed against her by defendant, and the district court admitted into evidence photographs of the battered victim, the bathroom door, the knife, and the smashed cell phone. There was probable cause to find that the charged offenses had been committed and that defendant had committed them. Although defendant presented the testimony of his girlfriend who attempted to provide him with an alibi, a magistrate should not refuse to bind a defendant over for trial simply because there is conflicting evidence. *People v. Yost*, 468 Mich. 122, 128; 659 N.W.2d 604 (2003). Furthermore, the district court expressly found that the victim was much more credible than defendant's girlfriend. See *id*. (a magistrate has the authority to assess the credibility of witnesses in a preliminary examination). Finally, "an evidentiary deficiency at the preliminary examination is not ground for vacating a subsequent conviction where the defendant received a fair trial and was not otherwise prejudiced by the error." *People v. Hall*, 435 Mich. 599, 601; 460 N.W.2d 520 (1990). Here, defendant received a fair trial and was not prejudiced by any assumed evidentiary deficiency at the preliminary examination.
>
> Lastly, defendant presents various frivolous claims of ineffective assistance of counsel that are not supported by the law and/or the facts contained in the record. We also deem the issues abandoned due to inadequate and incoherent briefing. See *People v. Matuszak*, 263 Mich. App. 42, 59; 687 N.W.2d 342 (2004). Defendant has not persuaded us that trial counsel's performance was deficient or that, assuming deficient performance, defendant suffered any prejudice. *People v. Carbin*, 463 Mich. 590, 599-600; 623 N.W.2d 884 (2001). Reversal is unwarranted.

*Harris*, 2019 WL 5418339, at *5 (footnote omitted). It is against that backdrop that the Court considers the issues raised in the present petition.

16

### A. Unlawful arrest

Petitioner contends that his arrest was unlawful because the warrant does not support arrest on a charge of felonious assault. This contention depends on Petitioner's ludicrous claim that the sworn facts—"[Petitioner] was holding the knife like he was going to stab her, again telling her he was going to kill her[,]" (Aff., ECF No. 3-1, PageID.46)—do not support a charge of felonious assault. Thus, Petitioner's "unlawful warrant" claim fails at the outset based on a complete lack of factual or legal support.

In the context of this proceeding, however, the claim fails for an entirely different reason: it does not provide any basis for habeas corpus relief. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (discussing that illegal arrest or detention does not void a subsequent conviction). The method by which petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction. *See Immigr. & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinios*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at * 1 (6th Cir. Feb. 1, 1990) ("[P]etitioner's arguments that his arrest was absent probable cause . . . [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction." (citing *United States v. Crews*, 445 U.S. 463, 474 (1980))). Accordingly, Petitioner's claim of illegal arrest is to no avail and the state courts' rejection of the claim is neither contrary to, nor an unreasonable application of, clearly established federal law. He is not entitled to habeas relief.

### B. Perjurious testimony

Petitioner claims that the prosecutor elicited false testimony from the victim. "[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with

17

'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)); *see also Jackson v. City of Cleveland*, 925 F.3d 793, 826 (6th Cir. 2019) (stating that "*Mooney* made it clear that the Fourteenth Amendment right to due process prohibits a knowing and deliberate use by a state of perjured evidence in order to obtain a conviction" (citation and internal quotes omitted)).

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted). Petitioner bears the burden of demonstrating that the testimony was actually perjured. *Id.* "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.*

Petitioner argues that the victim provided false testimony. For all of the reasons set forth above, Petitioner has failed to provide any support for the claim that the victim's testimony was false. To the extent the statements regarding the two different ways Petitioner wielded the knife are inconsistent—and Petitioner offers nothing to support even that—the inconsistency would not be sufficient to support his prosecutorial misconduct claim.

At best, Petitioner's assertion that the victim provided false testimony is supported only by the failed alibi testimony from Petitioner's girlfriend. The state court found that alibi testimony to be much less credible than the victim's testimony. *Harris*, 2019 WL 5418339, at *5. That credibility finding is a factual determination that this Court must presume to be correct. *Wesson v. Shoop*, 17 F.4th 700, 705 (6th Cir. 2021) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 339–40 (2003); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Petitioner can overcome that presumption with clear and convincing evidence. He offers nothing.

18

Certainly, if Petitioner has not shown that the testimony is false, he cannot show that the prosecutor knew the testimony was false. Therefore, Petitioner has failed to demonstrate that the state court's rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. He is not entitled to habeas relief.

**III.   Certificate of appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims as untimely or, in the alternative as meritless, was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, in light of the

19

utter lack of merit to Petitioner's habeas claims, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   January 5, 2023                                    /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge